IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

KELVIN SAXTON,

    Petitioner,

v.

WARDEN, TRUMBULL
CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:17-CV-703
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the Petition (Doc. 1) be **DENIED** and this case be **DISMISSED**.

### I. FACTS AND PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of the case as follows:

> In 2013, appellant and A.G. met and began dating. At the time, appellant was 27 and A.G. was 17. Shortly thereafter, they started living together in appellant's father's apartment. When they stayed there, they slept in the living room while appellant's father slept in his bedroom.FN1 Although the relationship started well, by April 2014, appellant had become worried that A.G. was cheating on him. During the night of April 14, 2014 and into the early morning hours of the 15th, appellant repeatedly asked her if she had cheated on him. A.G. denied doing so, but appellant apparently did not believe her so he continued his questioning. Eventually, appellant held a knife to her throat and told her he would cut her throat if she lied to him about cheating on him. He began to physically assault her, slapping and punching her with his hands as he continued to question her about her fidelity. Appellant also bit her face, head-

1

butted her in the nose, and stabbed her in the back with the knife. All of this occurred in the apartment's living room.

At some point during the assault, appellant slammed A.G. up against a wall in the living room and told her to lie down. She did while appellant continued to kick and punch her and stomp on her head. He then turned the lights off and told her to perform oral sex on him. She did not want to but did so because she felt like she had no choice. Appellant continued to hit her because he said she was not doing a good job. Appellant then told her to lie down on her back so that he could have sex with her. Again, she did not want to but she complied. She did not say anything because she was too scared. After these events, the two went to sleep. The next morning, while appellant was in the bathroom, A.G. left the apartment and went to her mother's nearby apartment. A.G. went to a hospital and was treated for extensive injuries to her head and upper torso, including a puncture wound on her back.

As a result of these events, a Franklin County Grand Jury indicted appellant with counts of felonious assault in violation of R.C. 2903.11, kidnapping in violation of R.C. 2905.01, domestic violence in violation of R.C. 2919.25, and two counts of rape in violation of R.C. 2907.02. Appellant entered a not guilty plea to the charges and proceeded to a jury trial.

At his trial, A.G. testified to the above version of events. In addition, police and medical personnel testified about her injuries and her treatment. One officer testified that he had "never seen anyone, man or woman, that was beaten that badly" in his 11 years of being on patrol. (Tr. 144.) Appellant did not testify, but his father did. He testified that he was awake all night watching television in his bedroom and that he did not hear any disturbance or yelling from the living room.

The jury found appellant guilty of all counts and the trial court sentenced him accordingly.

II. Appellant's Appeal

Appellant appeals and assigns the following errors:

> I. The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of felonious assault; kidnapping; and rape as those verdicts

> were not supported by sufficient evidence and were also against the manifest weight of the evidence.
>
> II. The trial court erred to the prejudice of appellant by improperly sentencing him to consecutive terms of incarceration in contravention of Ohio's sentencing statutes.
>
> III. The trial court erred to the prejudice of appellant by not merging his convictions for rape.
>
> FN1: It was unclear how much time the two stayed at appellant's father's house, but they did spend time at other places and were homeless for some time.

*State v. Saxton*, 61 N.E.3d 830, 832–33 (Ohio Ct. App. 2016). On March 24, 2016, the state appellate court sustained Petitioner's second assignment of error, but otherwise affirmed the judgment of the trial court, and remanded the case to the trial court for re-sentencing. *Id.* On July 27, 2016, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Saxton*, 146 Ohio St.3d 1472 (Ohio 2016). On November 10, 2016, the trial court held a re-sentencing hearing pursuant to the remand of the state appellate court, and re-imposed an aggregate term of twenty years of incarceration. (Doc. 10-1, PageID# 190). Petitioner did not file a timely appeal. However, on May 19, 2016, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (Doc. 10-1, PageID# 168). On September 27, 2016, the appellate court denied the Rule 26(B) application. (Doc. 10-1, PageID# 186). Petitioner did not appeal that denial to the Supreme Court of Ohio.

On August 10, 2017, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that the evidence is constitutionally insufficient to sustain his convictions (claim one); and that his convictions on two counts of rape should have been merged, and thus violate the Double Jeopardy Clause (claim two). Respondent argues that these claims are meritless.

## II.     STANDARD OF REVIEW

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ⸺ U.S. ⸺, ⸺, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e)(1) provides:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

"Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show

that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

## III. DISCUSSION

### A. Claim One

Petitioner asserts that the evidence is constitutionally insufficient to sustain his convictions on felonious assault, kidnapping, and rape. Specifically, Petitioner argues that the evidence showed that: the victim had suffered only a small scratch to her lower torso, and she could not recall the date or cause of that injury; she did not claim that Petitioner had forced her to have sex with him; and the prosecution did not recover a weapon. The state appellate court rejected this claim on the merits:

> [A]ppellant contends that his convictions are not supported by sufficient evidence and are also against the manifest weight of the evidence. Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP–881, 2011-Ohio-3161, 2011 WL 2536451, ¶ 11, citing *State v. Braxton*, 10th Dist. No. 04AP–725, 2005-Ohio-2198, 2005 WL 1055819, ¶ 15. "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id*. In that regard, we first examine whether appellant's conviction is supported by the manifest weight of the evidence. *State v. Gravely*, 188 Ohio App.3d 825, 2010-Ohio-3379, 937 N.E.2d 136, ¶ 46 (10th Dist.).
>
> \*\*\*
>
> Appellant argues that the evidence does not support his convictions. In doing so, he points out that A.G. was originally unsure how or when appellant stabbed her and that she did not call appellant's father for help even though he was in the apartment during the assault. He also argues that she did not testify that

5

appellant forced her to have sex with him. These points are not persuasive.

To the extent that appellant is attacking A.G.'s credibility, we reiterate that the jury is in the best position to determine the credibility of witnesses. *State v. Scott*, 10th Dist. No. 10AP–174, 2010-Ohio-5869, 2010 WL 4926442, ¶ 17; *State v. Eisenman*, 10th Dist. No. 10AP–809, 2011-Ohio-2810, 2011 WL 2408302, ¶ 20. The jury obviously chose to believe A.G.'s testimony describing the events. This is within the province of the trier of fact and given the great deference we afford to that determination, we cannot say that the jury lost its way in making that determination so as to create a manifest miscarriage of justice. *State v. Page*, 10th Dist. No. 11AP–466, 2012-Ohio-671, 2012 WL 566763.

Additionally, a defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was offered at trial. *State v. Campbell*, 10th Dist. No. 07AP–1001, 2008-Ohio-4831, 2008 WL 4332044, ¶ 23. The trier of fact is in the best position to take into account the inconsistencies in the evidence, as well as the demeanor and manner of the witnesses, and to determine which witnesses are more credible. *State v. DeJoy*, 10th Dist. No. 10AP–919, 2011-Ohio-2745, 2011 WL 2201189, ¶ 27. While appellant points to certain portions of A.G.'s testimony concerning the knife wound that were arguably inconsistent, these inconsistencies do not render the convictions against the manifest weight of the evidence. The jury was aware of these inconsistencies and chose to believe her testimony. This is within the province of the trier of fact. *State v. Conkel*, 10th Dist. No. 08AP–845, 2009-Ohio-2852, 2009 WL 1682006, ¶ 17–18; *State v. Thompson*, 10th Dist. No. 08AP–22, 2008-Ohio-4551, 2008 WL 4151594, ¶ 20–21. Additionally, we note that a doctor who treated A.G. testified that the wound was consistent with a knife stab. (Tr. 197.) Further, the shirt A.G. was wearing during the assault had a hole in it where she was stabbed. (Tr. 83.)

Lastly, although it is correct that A.G. did not use the word "force" in her testimony to describe the events that occurred that morning, that argument overlooks the entirety of her testimony describing the events, which clearly supports a finding that appellant forced her to engage in both fellatio and vaginal sex.FN2 During this encounter, appellant severely beat her and threatened her life with a knife. After doing so, he ordered her to perform fellatio on him and then ordered her to lay down so that he could have sex with her. She did not want to perform those acts but did so because she thought he was "going to hit me more or stab me again." (Tr. 90.)

> She testified that she had no choice but to comply. (Tr. 67.) In light of her testimony, the jury did not lose its way in concluding that appellant used force to compel A.G. to submit. *See State v. Durdin*, 10th Dist. No. 14AP–249, 2014-Ohio-5759, 2014 WL 7462990, ¶ 38, quoting *State v. Eskridge*, 38 Ohio St.3d 56, 59, 526 N.E.2d 304 (1988) ("'As long as it can be shown that the rape victim's will was overcome by fear or duress, the forcible element of rape can be established.'").
>
> A conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version. *State v. Lindsey*, 10th Dist. No. 14AP–751, 2015-Ohio-2169, 2015 WL 3540415, ¶ 43, citing *State v. Gale,* 10th Dist. No. 05AP–708, 2006-Ohio-1523, 2006 WL 827777, ¶ 19. Here, the jury did not lose its way in deciding to believe the victim's testimony and not appellant's version of events. Accordingly, appellant's convictions are not against the manifest weight of the evidence. This conclusion is also dispositive of appellant's claim that his convictions are not supported by sufficient evidence. *Page* at ¶ 12, citing *McCrary* at ¶ 17. Accordingly, we overrule appellant's first assignment of error.
>
> FN2: R.C. 2907.02(A)(2) provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

*Saxton*, 61 N.E.3d at 833–35.

In determining whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id*. (quoting *Jackson*, 443 U.S. at 326). Instead, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id*. at 296–97 (quoting *Jackson*, 443 U.S. at 326).

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 567 F.3d 191, 205 (6th Cir. 2009). Second, and even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome, and Petitioner has not done so here.

The Court concludes that the record reflects constitutionally sufficient evidence to sustain Petitioner's convictions. Petitioner was charged with knowingly causing or attempting to cause physical harm to A.G. by means of a knife, in violation of Ohio Revised Code § 2903.11 (felonious assault); restraining A.G. of her liberty by the use of force, threat, or deception, with the purpose to facilitate the commission of rape or felonious assault, and/or to engage in sexual activity with A.G. against her will, in violation of § 2905.01 (kidnapping); and compelling A.G. to engage in fellatio and vaginal intercourse by force or threat of force, in violation of § 2907.02 (two counts of rape). Indictment (Doc. 10-1, PageID# 55–57.)

A.G. testified that she moved in with Petitioner in October or November of 2013. Transcript (Doc. 10-1, PageID# 257.) On April 14, 2014, he accused her of disloyalty and began to assault her. She started to pack her belongings in an attempt to leave, but Petitioner bit her face, stabbed her with a knife in the back, head-butted her in the nose, and slapped and punched

8

her.  (PageID# 263–64).  Petitioner held the knife to her neck and threatened to slice her throat. (PageID# 265).  Blood was gushing out of her nose.  (PageID# 266).  Petitioner then instructed her to perform oral sex.  She did not want to, but complied because she was afraid, he was beating her, and she felt she had no choice.  (PageID# 268, 291).  Next, Petitioner ordered A.G. to lie down, and Petitioner had intercourse with her.  Petitioner kept telling her to "shut up and be quiet."  (PageID# 269.)  The next morning, when Petitioner went to the bathroom, she escaped and ran to her mother's house.  (PageID# 271–72).

A.G.'s mother called an ambulance.  (PageID# 274).  At the hospital, doctors stapled the stab wound on A.G.'s back closed—the wound was too deep for stiches.  (*Id.*).  A.G.'s forehead was swollen, her one eye was swollen shut, her arms were bruised.  (PageID# 275).  In addition, her jaw was swollen, and she was unable to eat for about three weeks because she could not open her mouth.  (PageID# 277).  At the time of the trial, A.G.'s hearing was still impaired and she was unable to move her one eyebrow as a result of the beating.  (PageID# 275).

A.G.'s testimony, standing alone, provides constitutionally sufficient evidence to sustain Petitioner's convictions.  In particular, the prosecution was not required to introduce the knife that Petitioner used to stab A.G. in order to establish that he stabbed her in view of A.G.'s testimony.  *See, e.g.*, *Peters v. Warden*, No. 2:14-cv-1803, 2015 WL 5453074, at *5 (S.D. Ohio Sept. 17, 2015) (witness testimony sufficient to sustain Petitioner's conviction on carrying a concealed weapon).  Further, and contrary to Petitioner's allegation here, as discussed, the record indicates that A.G. suffered serious injuries as a result of Petitioner's assault.  Detective Larry Ingram testified that he had never seen a person so badly beaten.  (PageID# 345).  "The photos don't do it justice."  (*Id.*)

Claim one is without merit.

### B. Claim Two

In claim two, Petitioner asserts that his convictions on two counts of rape should have been merged, because both acts occurred in a short span of time with no intervening events between them. The state appellate court rejected this claim as follows:

> [A]ppellant argues that his rape convictions, one based on fellatio and the other based on vaginal intercourse, should merge because they were committed close in time as part of one course of conduct and without separate animus or purpose. We disagree.
>
> Even in light of recent Supreme Court of Ohio case law that addresses merger,FN4 this court continues to follow the well-established principle that different forms of forcible penetration constitute separate acts of rape for which a defendant may be separately punished. *State v. Adams*, 10th Dist. No. 13AP–783, 2014-Ohio-1809, 2014 WL 1712846, ¶ 11, citing *State v. Accorinti,* 12th Dist. No. CA2012–10–205, 2013-Ohio-4429, 2013 WL 5533058, ¶ 13; *State v. Daniels*, 9th Dist. No. 26406, 2013-Ohio-358, 2013 WL 457253, ¶ 9. Here, appellant committed two different forms of forcible penetration which support two separate convictions for rape. Accordingly, the trial court did not err by not merging those convictions for purposes of sentencing. We overrule appellant's third assignment of error.
>
> FN4: *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, and *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, both address the proper analysis a trial court should apply for merger claims. Neither of those cases, however, involved different forms of rape committed against one victim.

*Saxton*, 61 N.E.3d at 836–37.

As a threshold matter, the Court notes that the state appellate court decided whether Petitioner's claims should have been merged under state law and did not address expressly whether Petitioner's Fifth Amendment rights had been violated. The Sixth Circuit has held, however, that such an analysis is "entirely dispositive" of the federal Double Jeopardy claim because it "answers the constitutional and state statutory inquiries." *Jackson v. Smith*, 745 F.3d

10

206, 210 (6th Cir. 2014) (internal quotation marks omitted). Consequently, such a decision is an adjudication of the federal claim "on the merits," and AEDPA's heightened standards apply. *Id.*

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977). The traditional test for a double jeopardy claim is the "same elements" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (requiring the court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to deal with the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger*, the critical question is whether, in reality, the multiple charges constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then double jeopardy is violated by charging the defendant under both.

However, "[w]here two offenses are the same for *Blockburger* purposes, multiple punishments can be imposed if the legislature clearly intended to do so." *Bates v. Crutchfield*, No. 1:15-cv-817, 2016 WL 7188569, at *5 (S.D. Ohio Dec. 12, 2016) (citing *Albernaz v. United States*, 450 U.S. 333, 344 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984); *Garrett v. United States*, 471 U.S. 773, 779 (1985); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)). Thus, "[e]ven if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments,

11

a court's inquiry is at an end." *Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013) (citing *Johnson*, 467 U.S. at 499 n. 8; *Hunter,* 459 U.S. at 368–69). "Specifically, '[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'" *Grable v. Turner*, No. 3:16-cv-273, 2016 WL 7439420, at *6 (S.D. Ohio Dec. 27, 2016) (quoting *Jackson v. Smith*, 745 F.3d 206 (6th Cir. 2014)) (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 (1983)). "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Id*. (quoting *Volpe v. Trim*, 708 F.3d 688 (6th Cir. 2013)) (citing *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)).

Here, Petitioner was charged and convicted on two separate criminal acts. Under these circumstances, the state appellate court's conclusion does not warrant federal habeas corpus relief. *See*, *e.g.*, *Cowherd v. Million*, 260 F. App'x 781, 786 (6th Cir. 2008) (holding that convictions on separate criminal acts do not violate the Double Jeopardy Clause); *Smith v. Mills*, 98 F. App'x 433, 436 (6th Cir. 2004) (holding that convictions on separate attempts to penetrate victim do not violate the Double Jeopardy Clause). "It is well established that the Double Jeopardy Clause does not prohibit a state from defining conduct to constitute two separate criminal offenses." *White v. Howes*, 586 F.3d 1025, 1027–28 (6th Cir. 2009) (citing *Missouri v. Hunter*, 459 U.S. 359, 368–69 (1983)). Petitioner thus has failed to establish that the state appellate court's decision rejecting this claim contravened or unreasonably applied federal law or resulted in an unreasonable determination of the facts in light of the evidence presented.

Claim two is without merit.

## IV. RECOMMENDED DISPOSITION

For the foregoing reasons, the undersigned recommends that the Petition (Doc. 1) be **DENIED** and this case be **DISMISSED**.

**<u>Procedure on Objections to Report and Recommendation</u>**

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

Date: February 22, 2018                        /s/ Kimberly A. Jolson
                                                          KIMBERLY A. JOLSON
                                                          UNITED STATES MAGISTRATE JUDGE